UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

JASON MCLAUGHLIN d/b/a )
DISCOUNT OUTLET, and )
JASON MCLAUGHLIN, )
 )
    Plaintiffs, )
 )
vs. ) Civil Action No. CV 96-S-847-NE
 )
EXIDE CORPORATION, )
 )
    Defendant. )

FILED 97 AUG 11 AM 11:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED AUG 11 1997

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment.[1] Plaintiffs claim fraud, misrepresentation, breach of warranty, and breach of contract, arising out of a course of dealings with defendant. Upon consideration of the motion, pleadings, briefs and evidentiary submissions, this court determines defendant's motion for summary judgment is due to be granted in part, but also denied in part.

### I. STATEMENT OF FACTS

Plaintiff Jason McLaughlin is the owner of "Discount Outlet," a store which sells, among other things, batteries for automobiles, lawnmowers, boats, and tractors. Defendant is a manufacturer, refurbisher, and seller of such batteries. In early 1993, the parties began a relationship in which defendant would sell batteries to plaintiff for resale to plaintiff's customers. By March or April of 1994, McLaughlin became dissatisfied with the

---

[1] This action originally was filed in the Circuit Court for Jackson County, Alabama, but removed by defendant pursuant to 28 U.S.C. § 1446, asserting diversity jurisdiction under 28 U.S.C. § 1441. Thus, this court will apply Alabama substantive law, and federal procedural law when deciding the motion for summary judgment. Hammer v. Slater, 20 F.3d 1137, 1140 (11th Cir. 1994).

relationship, and he ceased purchasing defendant's batteries in May of 1994. McLaughlin asserts four claims arising from the relationship: (1) breach of contract, based upon defendant's failure to keep its promise to supply "fresh" and "new" batteries; (2) breach of warranty for failure to honor a one year, free-replacement warranty on all of defendant's batteries; (3) misrepresentation, arising from defendant's alleged representations that all batteries were "factory new," of "good quality, merchantable and suitable for their intended purpose," and carried a one year warranty; and (4) fraud, based upon the same representations.

**A. Coding of Each Battery.**

Many of the factual disputes in this action arise from three relevant codes found on defendant's batteries: (1) the "manufacturing code"; (2) the "formation code"; and (3) the "ship code date sticker." When the casing for a new battery is created, it is stamped with a "manufacturing code." (Todd Saeger affidavit, at ¶ 16.) When the lead acid which powers the battery is poured into the casing, the casing is also stamped with a "formation code." *Id.* A battery will have only one code if the casing is manufactured and the acid is poured on the same day. *Id.* Defendant's distribution centers place a "ship code date sticker" on each battery. *Id.*, at ¶ 9. Those stickers indicate the month and year in which a battery is shipped, and are generally used to determine both the beginning of a warranty period *(id.)* and the

2

date a battery is rotated from a customer's stock. (Plaintiff's deposition, at 23.)

### B. Defendant Manufactures or Refurbishes Batteries of Different Qualities.

Defendant utilizes three classifications for its batteries: "first quality"; "second quality"; or "refurbished used batteries." Plaintiff purchased batteries of each quality.

#### 1. First quality batteries

Defendant classifies a battery as "first quality" if it passes tests indicating it is properly charged,[2] and no more than one year has elapsed from the date of manufacture. (Ed Dorminy affidavit, at ¶¶ 12, 13.) The "first quality" designation is assigned not only to newly manufactured batteries, but also unsold batteries that have rotated out of a customer's stock. Because batteries may lose part of their charge after 90 days, defendant has agreements with its customers to rotate their stock, and customers monitor their stock using the "ship code date sticker." (Todd Saeger affidavit, at ¶ 19.) After recharging, rotated batteries may be reshipped as first quality batteries, if they still meet the requisite tests, and, they are not more than one year old. *Id.*

---

[2] Those tests are: "(a) a voltmeter test showing that its voltage was at or above the level Exide had set as a minimum for first quality batteries; (b) a hydrometer test showing that the specific gravity of the electrolyte in each of the battery's cells was at or above the level Exide had set as a minimum for first quality batteries; (c) a load test that simulated the cranking of a car to show that the battery had the cranking capacity required by Exide of first quality batteries; and (d) a visual inspection showing that the battery had no cosmetic blemishes or imperfections." (Todd Saeger Affidavit, at ¶ 14.)

3

2. **Second quality batteries**

A battery will be sold as a "second quality battery" if it is over one year old (Saeger deposition, at 15), or if it meets first quality standards, but has cosmetic blemishes on its casing. (Id., at 14.)

3. **Refurbished batteries**

If a customer returns a battery which cannot meet either first or second quality standards, it may be cleaned, recharged and resold as a "refurbished battery." Such batteries are sold at a discount price, with either a limited warranty or no warranty at all.

C. **Alleged Contract and Representations Made to Plaintiff**

In March or April of 1993, McLaughlin met with defendant's Atlanta branch manager, Ed Dorminy, at his "Discount Outlet" store. They allegedly reached a verbal agreement, pursuant to which McLaughlin would be supplied with "fresh" batteries, and would receive a "one year free replacement warranty" on first quality batteries. (McLaughlin deposition, at 23, 26-27; Dorminy Affidavit, at ¶ 8.) Under that warranty, McLaughlin could return first quality batteries for full credit during a period of one year from the date of shipment. (Dorminy affidavit, at ¶¶ 8, 10.) Dorminy allegedly told McLaughlin "he had to return warranty batteries to the Exide Atlanta branch before he would receive any warranty credit for the batteries." (Dorminy Affidavit, at ¶ 10.) In explaining the warranty, Dorminy also told McLaughlin how to read the ship code sticker date, and instructed him on defendant's

4

rotation policy, which called for warranty replacement of unsold first quality batteries after two to three months. (Plaintiff's deposition, at 22, 26-27.)

D.  **Plaintiff's Dissatisfaction With Defendant, and Response to Defendant's Alleged Failures**

In March or April of 1994, McLaughlin noticed he was not receiving full replacement credit for batteries returned to defendant, but instead was receiving some form of pro rata credit. (McLaughlin deposition, at 53-55.) After contacting defendant about that discrepancy, McLaughlin received a partial warranty credit, but alleges he should have received an additional $1,760.00. (*Id.*, at 54, 60.) At the same time, McLaughlin noticed an "excessive" number of batteries being returned by customers "sooner than they should have." (*Id.*, at 63.) Consequently, he stopped purchasing defendant's batteries in May of 1994.

In September or October of 1994, Todd Saeger, defendant's new Atlanta branch manager, visited the "Discount Outlet" store to discuss McLaughlin's past due balance, and to inspect batteries for warranty credit. (Saeger affidavit, at ¶ 4.) Saeger showed McLaughlin how to read the "manufacturing code," and allegedly informed him that the "manufacturing code," rather than the ship code date sticker, was used to calculate the one year warranty. (McLaughlin deposition, at 111.) Thus, McLaughlin was "afraid" to return batteries still in his possession, because he believed defendant would claim the warranties had expired, and he would not receive sufficient credit. (*Id.*, at 138.)

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment not only is proper, but

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct 2548, 2552, 91 L.Ed.2d 265 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party "must produce evidence that shows there exists a genuine issue of material fact." *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and designate specific facts showing there exits a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1985). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249.

### III.  MISREPRESENTATION AND FRAUD

Claims for misrepresentation or fraud require proof of the following: "(1) a duty to speak the truth; (2) a false representation of a material existing fact, made intentionally, recklessly, or innocently; (3) action by the plaintiff in reliance upon the false representation; and (4) damage proximately resulting from the false representation." *Liberty National Life Insurance Company v. Allen*, 1997 WL 99724 at *3 (Ala. 1997). McLaughlin alleges defendant made three representations: (1) all batteries would be "factory new"; (2) all batteries would be of "good quality, merchantable, and suitable for the purpose for which they were designed"; and (3) all batteries would carry a one year warranty. (Complaint, at ¶ 23.) The evidence, however, demonstrates those statements were either true, or not made at all.

### A.  "Factory New"

There is no evidence McLaughlin was told the batteries would be "factory new." Rather, he only was promised "fresh" batteries. (McLaughlin deposition, at 23, 26-27.)

> Q. During your first conversation with Mr. Dorminy, did he and you discuss anything about how quickly Exide would ship its batteries to you after they were manufactured?
>
> A. No. He just told me he would send me fresh ones.
>
> Q. Did he use the term "fresh"?

7

> A. Yes, sir.
>
> Q. But you two didn't discuss what fresh means in terms of how long after they have been manufactured?
>
> A. Not really.

(*Id.*, at 26-27.) McLaughlin further testified that none of defendant's representatives ever told him "how old the batteries would actually be." (*Id.*, at 124-25.) That testimony is sufficient to establish the alleged "factory new" representation was never made.

McLaughlin claims he was "led to believe that [the batteries] shouldn't be over two to three months [old]." (*Id.*, at 65.) That belief was based upon "what Mr. Dorminy had told me about the warranties and everything about the sticker date." *Id.* Dorminy, however, simply told McLaughlin "about [his] one year free replacement and how to read the sticker date and to keep the batteries fresh. If they were to stay in stock a couple of two to three months, to send them back to get rotated." *Id.* at 23. Thus, McLaughlin somehow assumed the two to three month shelf life of a battery was equal to the time between manufacturing and shipment.

McLaughlin's unwarranted assumption cannot form the basis for any alleged representation of "factory newness" by defendant. McLaughlin ordered different qualities of batteries from defendant, and acknowledged that he was never told the exact time which could expire between manufacture and shipping. There is no evidence the "factory new" representation (or even a reasonable equivalent) was

8

ever made, and defendant is entitled to summary judgment with regard to that alleged representation.

B.  "Good Quality, Merchantable, and Suitable"

Like the "factory new" allegation, McLaughlin produces no evidence defendant made a specific representation that batteries would be of "good quality, merchantable, and suitable." In his brief, however, "[p]laintiff submits that each time Exide placed a ship code date sticker on one of plaintiff's batteries, it was making a new and independent representation as to the age of that battery." (Plaintiffs' brief, at 8.) That argument implicitly assumes an older battery is not of "good quality, merchantable or suitable."

Other than age, McLaughlin's only proof of poor quality is that some returned batteries "just didn't last long enough." (McLaughlin deposition, at 125, 81.) Defendant admits delivering batteries of varying ages: first quality batteries could be up to one year old; second quality batteries were over one year old; and refurbished batteries were of varying ages. McLaughlin, however, offers no proof either that the age of a battery makes it of "poor quality, unmerchantable, or unsuitable," or that any particular battery in his possession is defective.[3] In fact, defendant's evidence proves a battery up to one year old could still pass

---

[3]Plaintiff's argument that a battery "just didn't last long enough" is not proof that the battery was defective. A defective alternator can drain a battery, as can other faulty electrical systems in a car. Without specific proof of defects, the court cannot accept plaintiff's statement as substantial evidence sufficient to withstand summary judgment.

9

rigorous tests, and be merchantable as a first quality battery. Thus, there is no evidence that the representation of "good quality, merchantability, and suitability" (if made) was false, and summary judgment is appropriate.

**C. One Year Warranty on All Batteries**

Plaintiffs' complaint alleges defendant represented that "all" batteries were covered by a one year warranty. (Complaint, at ¶ 23.) Ed Dorminy testified, however, the warranty applied only to first quality batteries, and McLaughlin does not dispute that testimony. (Dorminy affidavit, at ¶ 8.) McLaughlin's testimony also indicates the dispute regarding the existence of a warranty is resolved.

> Q. In paragraph 23-C on page 6 of your complaint where you say the batteries were supposed to carry a one-year warranty, you don't claim that Exide ultimately failed to give you a one-year warranty, do you?
>
> A. They didn't on a few of the credit memos.
>
> Q. Right. I understand you have some credit memos and you have some batteries at your warehouse that you think you should be reimbursed to full replacement value, right?
>
> A. Yes, sir.
>
> Q. But ultimately Exide agreed with you, didn't it, that your warranty was a one-year warranty?
>
> A. Yes, sir.

(McLaughlin deposition, at 126.) McLaughlin claims he is still owed credit under the warranties, but neither party disputes the existence of the one year warranty. Thus, the alleged representation of one year warranties was true, and cannot form the

10

basis for fraud, but plaintiffs' credit disputes can raise breach of warranty issues.

## IV. BREACH OF WARRANTY

Defendant seeks summary judgment on plaintiffs' breach of warranty claims on the grounds that McLaughlin failed to return the warranted batteries in accordance with defendant's alleged warranty procedures. Thus, defendant relies upon Alabama Code Section 7-2-719(1)(a), which allows parties to:

> provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies to <u>return of the goods and repayment of the price</u> or to repair and replacement of nonconforming goods or parts. [emphasis supplied.]

Defendant contends the warranty for first quality batteries limited plaintiffs' remedies to return of the batteries and repayment of the purchase price. According to defendant, McLaughlin has not returned the batteries: therefore, he cannot claim breach of warranty for defendant's refusal to repay the purchase price.[4]

McLaughlin alleges the limitation of remedies is not applicable, because the warranty "failed its essential purpose." (Plaintiffs' Brief, at 11.) When a warranty fails of its essential purpose, the limitations provided in an agreement pursuant to § 7-

---

[4] Defendant cites *Ag-Chem Equipment Company, Inc. v. Limestone Farmers Cooperative, Inc.*, 567 So.2d 250, 252 (Ala. 1990), for the proposition that it was under no duty to repay the purchase price until plaintiff tendered the batteries. The warranty in *Ag-Chem*, however, had an express provision requiring the plaintiff to tender the batteries. In contrast, Todd Saeger's testimony indicates defendant would actually retrieve batteries which were covered by warranty if requested by plaintiff. (Saeger Deposition, at 23; Saeger affidavit, at ¶ 5.)

11

2-219(1)(a) are not applicable. *See* Alabama Code §7-2-219(2); *Ag-Chem Equipment Company, Inc. v. Limestone Farmers Cooperative, Inc.*, 567 So.2d 250, 252 (Ala. 1990). A warrantor must refuse to comply with the terms of the warranty in order for it to fail of its essential purpose. *Ag-Chem*, 567 So.2d at 252. A buyer, however, must give the warrantor the opportunity to comply with the limited warranty, or demonstrate the futility of giving such an opportunity. *Ex parte Miller*, 693 So.2d 1372, 1378 (Ala. 1997).

Jason McLaughlin and Todd Saeger provide conflicting evidence on the opportunity given defendant to comply with the warranty. Plaintiff's answers to interrogatories state that he called Saeger after Saeger's visit to the store, and that Saeger offered to send a truck to pick up the batteries. Plaintiff's Answers to Interrogatories, at ¶ 4. McLaughlin, however, did not want to release the batteries, for fear he would not receive proper warranty credit. *Id.*; Plaintiff's deposition at 138-39. Saeger testified about the same conversation, and said McLaughlin asked him to retrieve the batteries from his warehouse. Saeger did not do so, because he believed they were not manufactured by defendant. (Saeger deposition, at 32.) Viewed in a light most favorable to plaintiff, that testimony establishes McLaughlin gave defendant an opportunity to comply with the warranty, but it refused. Thus, the warranty failed of its essential purpose, plaintiffs' remedies were not limited, and summary judgment must be denied on the breach of warranty claim.

12

## V. BREACH OF CONTRACT

Defendant asserts the alleged oral agreement is void for uncertainty, and there can be no claim for breach of contract.

> [A] trial court should not attempt to enforce a contract whose terms are so indefinite, uncertain, and incomplete that the reasonable intentions of the contracting parties cannot be fairly and reasonably distilled from them.

*Cook v. Brown*, 393 So.2d 1016, 1018 (Ala. Civ. App. 1981).

> However, when a contract is found to be ambiguous, <u>but not void for uncertainty</u>, it is within the province of the jury to ascertain the facts and draw inferences from them to determine the meaning of the contract.

*Russellville Flower Craft, Inc. v. Searcy*, 452 So.2d 478, 481 (Ala. 1981)(emphasis supplied).

> To the extent that the terms of a contract are ambiguous, as a general rule such terms are nevertheless considered sufficiently certain if they are capable of being rendered certain or have been rendered certain by the performance of the parties under the contract.

*Shirley v. Lin*, 548 So.2d 1329, 1332 (Ala. 1989).

The parties agree Ed Dorminy merely promised to provide "fresh" batteries. Thus, defendant's claim of uncertainty arises from the ambiguity of the word "fresh." That term has not been rendered certain by the performance of the parties, and the court does not believe it is capable of being rendered certain. Plaintiff believes a "fresh" battery should be shipped no more than three months from its date of manufacture, while defendant believes any battery which passes its testing procedures is "fresh." There is no way to resolve those differences, and the contract must be declared void for uncertainty. Accordingly, summary judgment is appropriate on the breach of contract claim.

13

## VI. CONCLUSION

For the foregoing reasons, the court concludes defendant's motion for summary judgment is due to be granted in part, but also denied in part. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 11th day of August, 1997.

United States District Judge

14